# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

AMY R. NELSON,

    **Plaintiff,**

v.             **Case No:  6:17-cv-626-Orl-28DCI**

COMMISSIONER OF SOCIAL
SECURITY,

    **Defendant.**

_____

# REPORT AND RECOMMENDATION

  Amy R. Nelson (Claimant) appeals the Commissioner of Social Security's final decision denying her applications for disability benefits.  Doc. 1.  Claimant raises several arguments challenging the Commissioner's final decision and requests that the case be reversed and remanded for an award of benefits or, in the alternative, for further proceedings.  Doc. 20 at 9-16, 20-24, 27-29, 33.  The Commissioner argues that the ALJ committed no legal error and that his decision is supported by substantial evidence, and, as a result, his decision should be affirmed.  *Id*. at 16-20, 24-27, 29-34.  The undersigned **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**.

## I.  Procedural History

  This case stems from Claimant's applications for disability insurance benefits and supplement security income.  R. 205-14.  Claimant alleged that she became disabled on April 1, 2012.  R. 258.  Claimant's applications were denied on initial review and on reconsideration.  The matter then proceeded before an ALJ.  On June 30, 2015, the ALJ held a hearing, at which Claimant and her representative appeared.  R. 46-75.  On July 10, 2015, the ALJ entered his decision denying

Claimant's applications for disability benefits.  R. 26-39.  On February 6, 2017, the Appeals Council denied Claimant's request to review the ALJ's decision.  R. 1-3.  This appeal followed.

## II.    The ALJ's Decision

The ALJ found that Claimant suffered from the following severe impairments: Turner's syndrome; essential hypertension; pulmonary hypertension; history of congestive heart failure; asthma/bronchitis; disorders of the spine; hearing loss; obesity; affective disorders; and history of polysubstance abuse.  R. 29.[1]  The ALJ determined that none of the foregoing impairments, individually or in combination, met or medically equaled any listed impairment.  R. 29-30.

Next, the ALJ found that Claimant had the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a)[2] or light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b)[3] with the following specific limitations:

> [A] sit/stand option (meaning the claimant is able to sit or stand at her option to perform assigned tasks); she must avoid ladders or unprotected heights; she must avoid operation of heavy moving machinery; she must avoid concentrated dust, fumes, or gases; she needs low stress (no production line); she needs simple tasks; and she needs to avoid high noise environments.  The claimant can occasionally bend, crouch, kneel, or stoop; but must avoid squatting or crawling.

---

[1] The ALJ also found that Claimant suffer from a non-severe impairment of prediabetes.  R. 29.

[2] Sedentary work is defined as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. §§ 404.1567(a), 416.967(a).

[3] Light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities."  20 C.F.R. §§ 404.1567(b), 416.967(b).

R. 30.  In light of this RFC, the ALJ found that Claimant was able to perform her past relevant work as a ticket taker and other jobs in the national economy, such as house sitter, storage facility rental clerk, and surveillance system monitor.  R. 37-38.  Thus, the ALJ concluded that Claimant was not disabled between her alleged disability onset date, April 1, 2012, through the date of the decision, July 10, 2015.  R. 39.

## III.    Standard of Review

The Court's review is limited to determining whether the Commissioner applied the correct legal standards, and whether the Commissioner's findings of fact are supported by substantial evidence.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The Commissioner's findings of fact are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g), which is defined as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision, when determining whether the decision is supported by substantial evidence. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).  The Court may not decide facts anew, reweigh evidence, or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm it if the decision is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## IV.    Analysis

Claimant raises the following assignments of error: 1) the ALJ erred by failing to weigh treatment records from Central Florida Mental Health Associates, LLC (CFMH) and her Global Assessment of Functioning (GAF) scores; 2) the ALJ erred by relying on the Vocational Expert's

(VE) response to a hypothetical question that did not account for all of her functional limitations; and 3) the ALJ erred by finding Claimant's testimony concerning her pain and limitations "not entirely credible." Doc. 20 at 9-16, 20-24, 27-29. The undersigned will address each assignment of error in turn.

### A.  Treatment Records

Claimant argues that the ALJ erred by failing to state the weight he assigned to the treatment records from CFMH. Doc. 20 at 11, 14-5. Claimant also argues that the ALJ "totally overlooked" the GAF scores contained in the treatment records from CFMH and, as a result, failed to state the weight he assigned those scores. *Id*. at 15-16. Therefore, Claimant argues that the ALJ failed to apply the proper legal standards in reaching his RFC determination, and, as a result, his decision is not supported by substantial evidence. *Id*. at 16.

The Commissioner raises several arguments in response to Claimant's first assignment of error. First, the Commissioner argues that the treatment records from CFMH do not contain any medical opinions, and, thus, the ALJ was not required to weigh those records. *Id*. at 17-18. Second, the Commissioner argues that even if the treatment records from CFMH were interpreted as medical opinions, Claimant has "failed to show that the 'opinions' in any way undermine the ALJ's assessment of [her] RFC." *Id*. at 18-19. Third, the Commissioner argues that the ALJ considered the treatment records containing GAF scores, and expressly discussed one of the GAF scores in his decision. *Id*. at 19 (citing R. 34). Finally, the Commissioner argues that while the ALJ did not weigh the GAF scores his failure to do so does not require reversal. *See id*. at 19-20 (citing *Cranford v. Comm'r of Soc. Sec.*, Case No. 6:13-cv-415-Orl-GJK, 2014 WL 1017972, at *6-7 (M.D. Fla. Mar. 17, 2014). Therefore, the Commissioner argues that the ALJ applied the

proper legal standards in considering the treatment records from CFMH and the GAF scores, and his RFC determination is supported by substantial evidence.  *Id.*

The ALJ assesses the claimant's RFC and ability to perform past relevant work at step four of the sequential evaluation process.  *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004).  The RFC "is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments."  *Lewis*, 125 F.3d at 1440.  The ALJ is responsible for determining the claimant's RFC.  20 C.F.R. §§ 404.1546(c), 416.946(c).  In doing so, the ALJ must consider all relevant evidence, including the medical opinions of treating, examining and non-examining medical sources.  *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also Rosario v. Comm'r of Soc. Sec.*, 490 F. App'x 192, 194 (11th Cir. 2012).[4]

The ALJ must consider a number of factors in determining how much weight to give each medical opinion, including: 1) whether the physician has examined the claimant; 2) the length, nature, and extent of the physician's relationship with the claimant; 3) the medical evidence and explanation supporting the physician's opinion; 4) how consistent the physician's opinion is with the record as a whole; and 5) the physician's specialization.  20 C.F.R. §§ 404.1527(c), 416.927(c).  The ALJ must state the weight assigned to each medical opinion, and articulate the reasons supporting the weight assigned to each opinion.  *Winschel*, 631 F.3d at 1179.  The failure to state the weight with particularity or articulate the reasons in support of the weight prohibits the Court from determining whether the ultimate decision is rational and supported by substantial evidence.  *Id.*

---

[4] In the Eleventh Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority."  11th Cir. R. 36-2.

In October 2013, Claimant began treating at CFMH.  R. 578-83.  Specifically, Claimant treated with Autumn McBride, a licensed marriage and family therapist.  *Id*.  Ms. McBride initially assessed Claimant with depressive disorder and a GAF score between 41 and 50.[5]  R. 583. Claimant treated with Ms. McBride several times a month through March 2014.  R. 584-634. Initially, Claimant routinely exhibited signs of depression and anxiety.  R. 584-607.  After several months of treatment, Claimant began exhibiting continued improvement in her mood and affect. R. 611-22, 626-28, 632-34.  In November 2014, Claimant returned to CFHM complaining of depression and anxiety.  R. 763.  Claimant was assessed with depressive disorder NOS and posttraumatic stress disorder, and she was assigned a GAF score between 51 and 60.[6]  *Id*.  There is no evidence that Claimant treated at CFHM after November 2014.

The ALJ noted that Claimant "sought mental health treatment in October 2013 and participated in generally weekly supportive therapy sessions through at least March 2014."  R. 34 (citing R. 578-634).  The ALJ also noted that the treatment Claimant was receiving resulted in an improved GAF score between 51 and 60, which indicates "moderate symptoms or limitations in functioning."  *Id*.  The ALJ, however, did not assign any weight to the treatment records from CFMH or the GAF scores contained in those records.  *See* R. 26-39.

---

[5] A GAF score is used to report an individual's overall level of functioning, with a score between 41 and 50 indicating: "**Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **OR any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job)."  Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32, 34 (4th ed. Text Revision, 2000) (emphasis in original).

[6] A **GAF** score between 51 and 60 indicates: "**Moderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational, or school functioning** (e.g., few friends, conflicts with peers or co-workers)."  Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. Text Revision, 2000) (emphasis in original).

Claimant argues that the treatment records from CFMH are "extremely important" because they show that she has "significant problems with depression and anxiety resulting in a limited insight and impaired judgment." Doc. 20 at 14-15.  Thus, Claimant argues that the ALJ should have weighed these treatment records.  *Id*. at 15.  "A medical provider's treatment notes may constitute medical opinions if the content reflects judgment about the nature and severity of the claimant's impairments." *Lara v. Comm'r of Soc. Sec.*, 705 F. App'x 804, 811 (11th Cir. 2017) (citing *Winschel*, 631 F.3d at 1179).  The treatment records at issue document Claimant's subjective statements, mental status, and treatment.  R. 584-634, 763-64.  The treatment records, however, do not reflect any statements or judgments about the nature and severity of Claimant's impairments, such as the severity of her depression, nor do they contain any opinions about Claimant's functional limitations, such as the impact her depression has upon her ability to function. *See id*.  Thus, the undersigned finds that the ALJ was not required to weigh the treatment records from CFMH.

Further, assuming the treatment records from CFMH contain medical opinions that should have been weighed, the ALJ's failure to weigh those medical opinions is harmless error.  The ALJ considered the treatment records from CFMH, as well as the other medical evidence concerning Claimant's mental impairments, and found that Claimant's mental impairments limited her to performing simple tasks and low stress work.  R. 30, 33-34.  Claimant has pointed to nothing in the treatment records from CFMH, such as observations concerning the severity of Claimant's symptoms or opinions concerning Claimant's functional limitations, which demonstrate that Claimant's impairments caused functional limitations greater than those contained in the ALJ's RFC determination. *See Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005) (failure to weigh a medical opinion is harmless error if the opinion does not directly contradict the ALJ's

RFC determination).  Instead, the ALJ's RFC determination appears to be consistent with the treatment records from CFMH, because, as the ALJ noted, the Claimant improved with treatment. *Compare* R. 578-83 *with* R. 763-64.  Thus, to the extent the ALJ erred by not weighing the treatment records from CFMH, the undersigned finds that the error is harmless.

Next, with respect to Claimant's GAF scores, the undersigned finds that the ALJ neither "overlooked" Claimant's GAF scores, nor does the ALJ's failure to weigh the GAF scores require reversal.  While the ALJ did not expressly mention Claimant's initial GAF score, the ALJ did consider the treatment records containing that GAF score.  R. 34 (citing R. 578-634).  Thus, it appears that the ALJ considered Claimant's initial GAF score.  *See, e.g.*, *Smith v. Comm'r of Soc. Sec.*, Case No. 6:10-cv-1478-Orl-31KRS, 2011 WL 6217110, at *6-7 (M.D. Fla. Nov. 1, 2011) *report and recommendation adopted*, 2011 WL 6217124 (M.D. Fla. Dec. 14, 2011), *aff'd*, 486 F. App'x 874 (11th Cir. 2012) (stating "[b]ecause the ALJ indicated that he carefully reviewed the records before him, and there is no indication that he overlooked or misconstrued any GAF score, I recommend that the Court find that the ALJ did not err by failing to include the GAF scores in his decision or by failing to state the weight he gave to each score."); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (there is no rigid requirement that an ALJ specifically refer to every piece of evidence in the record).  Further, the ALJ expressly discussed Claimant's subsequent GAF score.  R. 34.  In light of the ALJ's discussion of the treatment records from CFMH and the second GAF score, there is no indication that he overlooked or misconstrued any of Claimant's GAF scores.  Thus, the undersigned finds that the ALJ did not error by failing to expressly discuss all of Claimant's GAF scores or weigh those scores.  *See, e.g. Bruner v. Comm'r of Soc. Sec.*, Case No. 8:08-cv-1744-T-27GJK, 2009 WL 3052291, at *2 (M.D. Fla. Sept. 23, 2009) (finding that that ALJ's failure to mention or weigh the claimant's GAF score does not show the

ALJ failed to consider all medical evidence); *Smith*, 2011 WL 6217110, at * 6-7 (similar); *Campanile v. Comm'r of Soc. Sec.*, Case No. 6:15-cv-1320-Orl-28TBS, 2016 WL 7644852, at *4 (M.D. Fla. Dec. 14, 2016) (similar).[7]

Therefore, in light of the foregoing, it is **RECOMMENDED** that the Court reject Claimant's first assignment of error.

### B. Hypothetical Question

Claimant argues that the ALJ's hypothetical question to the VE was not supported by substantial evidence for the following reasons: 1) the hypothetical was flawed for the same reasons Claimant argued in her first assignment of error; 2) the hypothetical did "not accurately account for all the limitations of the claimant as outlined in the evidence;" and 3) the hypothetical did not sufficiently account for Claimant's moderate limitations in maintaining concentration, persistence, or pace.  Doc. 20 at 20-24.  Thus, Claimant argues that the ALJ erred by relying on the VE's testimony in determining that Claimant can perform her past relevant work as a ticket taker and other work in the national economy.  *Id*. at 24.

The Commissioner argues that ALJ's hypothetical sufficiently accounts for Claimant's moderate limitations in maintaining concentration, persistence, or pace and is otherwise supported

---

[7] Claimant points to the decisions in *McCloud v. Barnhart*, 166 F. App'x 410 (11th Cir. 2006) and *Denton v. Comm'r of Soc. Sec.*, Case No. 6:10-cv-1893-Orl-GJK, 2012 WL 695704 (M.D. Fla. Mar. 5, 2012), which relies on *McCloud*, for the proposition that the ALJ was required to weigh the GAF scores.  Doc. 20 at 15-16.  Those cases are distinguishable from this case since *McCloud* involved factual misrepresentations about the claimant's GAF scores, *McCloud*, 166 F. App'x at 418, and *Denton* did not involve reversal due to a failure to expressly weigh GAF scores, *see Denton*, 2012 WL 695704, at *9-11.  Further, these cases do not stand for the proposition that an ALJ must expressly state the weight assigned to GAF scores.  *See McCloud*, 166 F. App'x at 418; *Denton*, 2012 WL 695704, at *9-11.  Thus, these cases do not support Claimant's argument that the ALJ erred by not expressly weighing Claimant's GAF scores.  *See Cranford*, 2014 WL 1017972, at *6-7 (distinguishing *McCloud* and *Denton* and finding that the ALJ did not err by failing to weigh Claimant's GAF scores where the ALJ thoroughly considered the medical evidence containing Claimant's GAF scores).

by substantial evidence. *Id*. at 24-27. Thus, the Commissioner argues that the ALJ did not err by relying on the VE's testimony in determining that Claimant can perform her past relevant work as a ticket taker and other work in the national economy. *Id*. at 27.

The ALJ may consider the testimony of a VE in determining whether the claimant can perform his past relevant work, *Hennes v. Comm'r of Soc. Sec. Admin.*, 130 F. App'x 343, 346 (11th Cir. 2005), and other jobs in the national economy, *Phillips*, 357 F.3d at 1240. The ALJ is required to pose hypothetical questions that are accurate and that include all of the claimant's functional limitations. *See Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985). The ALJ, however, is not required to include "each and every symptom" of the claimant's impairments, *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007), or "findings . . . that the ALJ . . . properly rejected as unsupported" in the hypothetical question, *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004). Where the ALJ relies on the VE's testimony, but fails to include all the claimant's functional limitations in the hypothetical question, the final decision is not supported by substantial evidence. *See Pendley*, 767 F.2d at 1562 (quoting *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)).

The ALJ posed a hypothetical question to the VE that is consistent with the ALJ's RFC determination. *Compare* R. 30 *with* R. 71-72. In response, the VE testified that Claimant could perform her past work as a ticket taker and other unskilled jobs in the national economy. R. 72-73. Based in the VE's testimony, the ALJ found that Claimant could perform her past work as a ticket taker and other jobs in the national economy. R. 37-38.

First, Claimant argues that the ALJ's hypothetical to the VE was not supported by substantial evidence for the same reasons she argued in her first assignment of error. Doc. 20 at 20. The success of this argument is contingent upon the success of Claimant's first assignment of

error.  The undersigned found the arguments Claimant raised in her first assignment of error unpersuasive.  *See supra* pp. 4-9.  Therefore, Claimant's first argument under her second assignment of error is likewise unpersuasive.

Second, Claimant argues that the ALJ's hypothetical did "not accurately account for all the limitations of the claimant as outlined in the evidence."  Doc. 20 at 21.  Claimant, however, fails to articulate what limitations should have, but were not, included in the ALJ's hypothetical.  *See id*.  In light of this failure, the undersigned finds Claimant's second argument unpersuasive.

Finally, Claimant argues that the ALJ's hypothetical did not sufficiently account for Claimant's moderate limitations in maintaining concentration, persistence, or pace.  Doc. 20 at 21.  The undersigned disagrees.

If a claimant is found to suffer moderate limitations in maintaining concentration, persistence, or pace, the ALJ must either "indicate that medical evidence suggested [that claimant's] ability to work was unaffected by [those] limitation[s]," or include those limitations, either explicitly or implicitly, in the hypothetical question(s) posed to the VE.  *Winschel*, 631 F.3d at 1181.  In the RFC, the ALJ can account sufficiently for moderate limitations in maintaining concentration, persistence and pace by including a restriction to simple or routine tasks, if the medical evidence demonstrates that the claimant has the ability to perform those tasks despite such limitations.  *See, e.g.*, *Timmons v. Comm'r of Soc. Sec.*, 522 F. App'x 897, 907 (11th Cir. 2013); *Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950-51 (11th Cir. 2013); *Washington v. Soc. Sec. Admin., Comm'r*, 503 F. App'x 881, 883 (11th Cir. 2013).

The ALJ noted the following with respect to Claimant's ability to maintain concentration, persistence, or pace:

> The claimant reported the need for frequent breaks during physical activity because of her medical condition.  She indicated some issues with concentration and

> understanding of instructions.  However, she remains capable of attending weekly scheduled therapy appointments over a substantial period of time (Exhibit 9F), driving, shopping, managing finances, watching movies, and working puzzles.

R. 30.  As a result, the ALJ found that Claimant had moderate limitations in maintaining concentration, persistence, or pace.  *Id*.  The ALJ proceeded to find that Claimant had the RFC to perform, in relevant part, "simple tasks" and "low stress" work with "no production line[s.]"  *Id*. These limitations sufficiently account for Claimant's moderate limitations in maintaining concentration, persistence, or pace.  Specifically, the limitation to "simple tasks" is supported by Dr. Najib Kirmani's opinion.  Dr. Kirmani performed a psychiatric evaluation of Claimant in December 2012 and diagnosed her with a persistent depressive disorder (dysthymia).  R. 495-97. Despite that diagnosis, Dr. Kirmani opined that Claimant is able to "understand, remember, and carry out instructions."  R. 497.  The ALJ assigned Dr. Kirmani's opinion significant weight.  R. 36.  This evidence supports the ALJ's finding that Claimant can perform "simple tasks" despite her moderate limitations in maintaining concentration, persistence, or pace.  *See Washington*, 503 F. App'x at 883 ("Because the evidence showed that [claimant] could perform simple, routine tasks, the ALJ's hypothetical question to the VE which included this limitation adequately addressed [claimant's] limitations as to concentration, persistence, or pace.").  Further, the ALJ accounted for Claimant's moderate limitations in persistence or pace by limiting her to low stress work that did not involve production lines.  Thus, the undersigned finds that the ALJ sufficiently accounted for Claimant's moderate limitations in maintaining concentration, persistence and pace in the RFC determination.

In light of the foregoing, the undersigned finds that the ALJ's hypothetical to the VE was supported by substantial evidence, and, as a result, the ALJ did not err by relying on the VE's testimony in determining that Claimant can perform her past relevant work as a ticket taker and

other work in the national economy.  Therefore, it is **RECOMMENDED** that the Court reject Claimant's second assignment of error.

### C. Credibility

Claimant argues that the ALJ provides a boilerplate credibility determination and does not provide any specific reasons supporting his determination that Claimant's statements concerning the intensity, persistence, and limiting effects of her symptoms are "not entirely credible[.]"  Doc. 20 at 28-29.

The Commissioner argues that the ALJ provided specific reasons in support of his credibility determination and that his credibility determination is supported by substantial evidence.  *Id*. at 29-33.

A claimant may establish "disability through his own testimony of pain or other subjective symptoms."  *Dyer*, 395 F.3d at 1210.  A claimant seeking to establish disability through his or her own testimony must show:

> (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).  If the ALJ determines that the claimant has a medically determinable impairment that could reasonably produce the claimant's alleged pain or other symptoms, the ALJ must then evaluate the extent to which the intensity and persistence of those symptoms limit the claimant's ability to work.  20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).  In doing so, the ALJ considers a variety of evidence, including, but not limited to, the claimant's history, the medical signs and laboratory findings, the claimant's statements, medical source opinions, and other evidence of how the pain affects the claimant's daily activities and ability to work.  *Id*. at §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3).  "If the ALJ decides not to

credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so." *Foote*, 67 F.3d at 1561-62.  The Court will not disturb a clearly articulated credibility finding that is supported by substantial evidence.  *Foote*, 67 F.3d at 1562.

The ALJ summarized the Claimant's testimony in his decision and found that Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible[.]"  R. 31-32.  The ALJ proceeded to provide specific reasons in support of his credibility determination, stating:

> In searching for evidence that would support the claimant's allegations regarding her limitations related to her severe impairments, the [ALJ] notes that the objective evidence fails to provide a compelling basis for the claimant's statements regarding her inability to perform basic work activities.  If one compares the findings on objective diagnostic imaging studies as well as the result of the many physical examinations documented throughout the record, it appears that the complaints of debilitating pain and other symptoms are out of proportion to the overall credible and objective medical findings.
>
> Although the claimant has received treatment for the allegedly disabling impairments, that treatment has been essentially routine and conservative in nature and generally successful in controlling the claimant's symptoms.  Hospitalization records indicate successful control and stabilization of acute symptomology, while follow-up outpatient records generally indicate progressive, uncomplicated recovery periods with treatment compliance.  In July 2012, the claimant's orthopnea was attributed to congestive heart failure from uncontrolled hypertension (Exhibit 2F/11), and it was noted that the claimant had taken no blood pressure medication for three weeks prior to the need for hospitalization (Exhibit 2F/3). Medical records reflect a number of periods of medication noncompliance (e.g. Exhibits 4F/29, 10F/20, 10F/29, and 10F/101).  While the claimant's noncompliance is not a basis for denying her claim, it is a basis for discounting her overall credibility, as such noncompliance would not be expected were the claimant's impairments as severe or disabling as alleged, and suggests that the claimant's symptomatology is tolerable without the need to follow these recommendations.  Even the claimant's mother reported that the claimant did not always follow her doctor's orders (Exhibit 9E/8).
>
> Although the claimant testified that she had limited resources for medical treatment, she has not provided evidence that she sought treatment at low- or no-cost treatment

facilities or was denied treatment/medication because of a lack of funds. It is noted that the claimant apparently had funds to pay for cigarettes.

The claimant indicated that medications provided relief of her symptoms, and the claimant's use of medications does not suggest the presence of impairments that are more limiting than found in this decision. Although the claimant testified to daily back/hip pain that significantly restricted her activities, a review of the medical treatment records fails to reveal consistent or ongoing complaints of musculoskeletal pain or other related symptoms to her treating and examining healthcare providers. Further, there is no evidence that analgesic medications have been prescribed on any consistent basis for pain relief. The claimant did not report the use of even over-the-counter pain medications (Exhibit 22E). Over the course of treatment, no substantial changes were made to the treatment regimen, suggesting that the treating provides felt symptom control was adequate.

The claimant alleged adverse medication side effects, including throat irritation and dizziness. However, the medical records, such as office treatment notes, do not corroborate that allegation and fail to reflect reported adverse side effects that would interfere with the claimant's ability to perform work activities in any significant manner.

In assessing the claimant's credibility, the [ALJ] notes that the claimant has a steady work history (Exhibit 10D); however, this is only one factor to be considered. Despite the severity of the claimant's subjective complaints, there is minimal objective evidence of disabling impairments.

The claimant described daily activities that are not limited to the extent expected, given the complaints of disabling symptoms and limitations. Despite her impairments, the claimant remains capable of living independently within her household, adequately tending to her personal care needs, preparing at lease simple meals, performing routine household chores, driving, shopping, managing personal finances, using a computer for Facebook, email and banking transactions, socializing with others, caring for her pet, and going to the gym to exercise. She maintains relationships with family members and has a boyfriend. She watches television and movies, reads, and eats out 1-2 times a month.

As mentioned earlier, the record reflects that since the alleged onset date, the claimant has engage in work activity. Although the [ALJ] finds the claimant's work activity did not constitute disqualifying substantial gainful activity, it does indicate that the claimant's capacities and abilities have, at least at time, been somewhat greater than the claimant has generally reported. The [ALJ] finds that the claimant's work activity is inconsistent with the allegations of ongoing disability.

Overall, the claimant's functional abilities indicate a good tolerance for some level of work activity, and limitations related to the claimant's severe impairments have been allowed for in the residual functional capacity described above. Despite

> claiming a complete inability to work, the record provides no convincing evidence over time, and the [ALJ] cannot find the testimony and alleged limitations of the claimant to be well supported by the evidence of record.

R. 34-35.  Thus, the ALJ found that Claimant's allegations concerning the intensity, persistence, and limiting effects of her symptoms were "not entirely credible" because the allegations were: 1) not entirely consistent with the objective medical evidence; 2) undermined by Plaintiff's occasional failure to comply with prescribed treatment; and 3) inconsistent with her activities of daily living and her work activity during the relevant period.  *Id*.

The foregoing excerpt demonstrates that the ALJ's credibility determination was not limited to the boilerplate language highlighted by Claimant.  Thus, the undersigned finds that Claimant's argument challenging the sufficiency of the ALJ's credibility determination unpersuasive.

The ALJ provided several specific reasons in support of his credibility determination, R. 34-35, which Claimant has not challenged on appeal, *see* Doc. 20 at 24-27.  The undersigned finds that the reasons articulated by the ALJ in support of his credibility determination support that determination and are supported by substantial evidence.  Thus, the undersigned finds that the ALJ articulated good cause in finding Claimant's testimony concerning the intensity, persistence, and limiting effects of her symptoms "not entirely credible," and that his reasons are supported by substantial evidence.  *See Foote*, 67 F.3d at 156162 (reviewing court will not disturb credibility finding with sufficient evidentiary support).  Therefore, the undersigned **RECOMMENDS** that the Court reject Claimant's third assignment of error.

## V.   Conclusion

Accordingly, it is **RECOMMENDED** that the Court:

1.   **AFFIRM** the Commissioner's final decision; and

2. Direct the Clerk to enter judgment in favor of the Commissioner and against the Claimant, and close the case.

## **NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on May 29, 2018.

DANIEL C. IRICK
UNITES STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy